**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

FELICIA Y. WITHERUP, Individually
and HENNE C. WITHERUP,
Individually,

    Plaintiffs,

v.                                                       Case No. 3:14-cv-1303-J-32MCR

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, a foreign profit
corporation,

    Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Felicia and Henne Witherup were driving their 2007 Mercedes when they were involved in an automobile accident on January 30, 2014 in Jacksonville, Florida. In this declaratory judgment action, the parties seek a determination as to their rights and responsibilities with respect to uninsured motorist coverage for the accident under insurance policies issued to the Witherups by State Farm. The Witherups contend they are entitled to such coverage, while State Farm maintains that the Witherups signed written rejections of uninsured motorist coverage for each of their policies and therefore they had no uninsured motorist coverage at the time of the accident. The case was tried before the Court on April 5, 2016, the record of which is incorporated herein.[1] The parties submitted post-trial proposed findings of fact and conclusions of

---

[1] Neither party provided the Court with an official transcript of the

law. The Court then asked for and received supplemental briefing (Docs. 60, 61). The Court has reviewed the record, examined the evidence presented at trial, read the parties' post-trial submissions, and considered the arguments. The Court now makes the following findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

**I.     FACTUAL FINDINGS**

At the time of the automobile accident on January 30, 2014, in addition to the 2007 Mercedes involved in the crash, the Witherups had two other vehicles, a 1999 Lexus and a 2008 Chrysler. Each of the Witherups' three vehicles was insured by a separate policy issued by State Farm.

State Farm issued to the Witherups a policy numbered 776 9075 ("the '9075 Policy") on April 1, 2009, insuring the 2008 Chrysler. The policy provided bodily injury liability coverage limits of $100,000 per person / $300,000 per accident. The policy did not include uninsured motorist coverage. Henne Witherup, a named insured, signed a written uninsured motorist coverage rejection form rejecting uninsured motorist coverage under the '9075 Policy. (Def.'s Ex. 2b.) State farm issued a second policy, numbered 776 9076 ("the '9076 Policy"), to the Witherups on April 1, 2009, insuring the 1999 Lexus. The policy also excluded uninsured motorist coverage. Henne Witherup, a named insured on the '9076 Policy, signed a written uninsured motorist

---

proceedings. Therefore, the Court has relied on a "rough" transcript but will not cite to it in this opinion.

coverage rejection form rejecting uninsured motorist coverage as to that policy. (Def.'s Ex. 1a.)

On June 12, 2010, the Witherups purchased the Mercedes that, in 2014, was involved in the accident giving rise to this litigation. At the time of purchase, Felicia Witherup contacted a State Farm call center to obtain coverage on the Mercedes and spoke with a call center representative. (See Pl.'s Ex. 1.) Based on that call, State Farm mistakenly treated the Mercedes as a replacement vehicle for the 2008 Chrysler. Coverage was temporarily extended to the Mercedes under the '9075 Policy for fourteen days following its purchase on June 12, 2010. (Id.) After that fourteen day period ending June 26, 2010, the Mercedes was uninsured until July 27, 2010, at which time the Mercedes was substituted for the Chrysler on the '9075 Policy. As a result of the Mercedes' mistaken substitution on the '9075 Policy, the Chrysler was dropped from that policy and went uninsured from July 27, 2010 until September 7, 2010, when Felicia Witherup followed up with her State Farm agency because she had not been receiving premium or renewal notices for the Chrysler.

On September 7, 2010, State Farm issued policy number 926 7355 ("the '7355 Policy"), insuring the Chrysler. The policy provided bodily injury liability coverage limits of $100,000 per person / $300,000 per accident. It did not include uninsured motorist coverage. Felicia Witherup signed a written uninsured motorist coverage rejection form rejecting uninsured motorist coverage as to the '7355 Policy. (Def.'s Ex. 3c.)[2] The Mercedes remained on the existing '9075 Policy. There is no evidence of

---

[2] The selection/rejection forms used by State Farm and executed by the

3

forgery, fraud, or trickery by State Farm or the Beth Arnold Agency, the Witherups' agent, in obtaining the Witherups' signatures on the written uninsured motorist coverage rejection forms.[3]

State Farm sends semi-annual renewal or premium notices to its policy holders, informing them of various uninsured motorist coverage options, and advising them to consider adding uninsured motorist coverage and to contact their State Farm agent should they wish to change coverage.[4] State Farm also sends its policy holders a declarations page when the policy is first issued and when there are any changes in coverage, vehicles, names, or addresses; and insurance identification cards when its motor vehicle insurance policies are renewed every six months. The renewal or premium notices, declarations pages, and insurance identification cards list all coverages, including uninsured motorist coverage (if any).

---

Witherups as to each of their policies comply with all statutory requirements. (Doc. 52 at 1-2 (stipulation).)

[3] At trial, the Witherups testified that the signatures on the documents were theirs, but denied signing UM selection/rejection forms and suggested the dates and other handwriting on the document was not that of either Felicia or Henne Witherup. Beth Arnold, of the Beth Arnold Agency, testified that when clients call to discuss their coverage, the routine practice of her office is the Agency employee completes all pertinent parts of the application, including the UM selection/rejection forms, dates the forms, and sends the documents to the clients for signatures by methods such as U.S. Mail, email, or fax. Clients may then return the signed forms by these same methods, or bring the forms to the office in person. The undersigned finds credible the testimony of Beth Arnold in this regard and further finds that the dates and other information disclaimed by the Witherups as their handwriting was completed by Agency employees, and further that the signatures of the Witherups on the UM selection forms are in fact their signatures and were obtained at the time the policies were issued in accordance with the Agency's normal practices.

[4] These notices comply with the requirements of Fla. Stat. § 627.727(1). (Doc. 52 at 2 (stipulation).)

4

As to the '9075 Policy, State Farm sent the Witherups semi-annual premium or renewal notices from mid-August 2009 through mid-October 2013. (Def.'s Exs. 2d, 2e, 2m, 2n, 2p-2r, 2t.) State Farm also sent declarations pages from April 2009 through May 2013 (Def.'s Exs. 2c, 2j, 2l, 2o, 2s), and insurance identification cards with effective dates of October 1, 2012, April 1, 2013, and October 1, 2013 (Def.'s Ex. 4). As to the '9076 Policy, State Farm sent semi-annual premium or renewal notices for the '9076 Policy from mid-August 2009 through mid-August 2013. (Def.'s Ex. 1b-1j.) As to the '7355 Policy, State Farm sent semi-annual premium or renewal notices from mid-January 2011 through mid-August 2013 (Def.'s Exs. 3g-3k, 3m), and four declarations pages from September 2010 through January 2014 (Def.'s Exs. 3e, 3f, 3l, 3n). Consistent with the written waivers, none of these documents showed that any of the policies provided UM coverage or that the Witherups were paying premiums for UM coverage.

## II.   CONCLUSIONS OF LAW

In Florida, no motor vehicle liability policy that provides bodily injury liability coverage shall be delivered or issued unless UM coverage is provided.[5] Fla. Stat. §

---

[5] The statute governing UM coverage reads, in part:

> No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However,

5

627.727(1). However, UM coverage is not required when a named insured makes a written rejection of such coverage on a statutorily approved form.[6] Id. Evidence of a

> the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy. . . . Unless an insured, or lessee having the privilege of rejecting uninsured motorist coverage, requests such coverage or requests higher uninsured motorist limits in writing, the coverage or such higher uninsured motorist limits need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits when an insured or lessee had rejected the coverage. . . . The rejection or selection of lower limits shall be made on a form approved by the office. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." <u>If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds</u>. The insurer shall notify the named insured at least annually of her or his options as to the coverage required by this section. Such notice shall be part of, and attached to, the notice of premium, shall provide for a means to allow the insured to request such coverage, and shall be given in a manner approved by the office. . . .

Fla. Stat. § 627.727(1) (emphasis added).

[6] Although a named insured may choose to limit or reject UM coverage, "such limitation/rejection must be executed in writing on an approved Office of Insurance Regulation form fully advising the applicant that UM coverage will be equal to liability limits unless the applicant selects lower limits or rejects coverage." <u>Sommerville v. Allstate Ins. Co.</u>, 65 So. 3d 558, 562 (Fla. Dist. Ct. App. 2011). Here, the parties have stipulated that the UM rejection forms and renewal notices comply with the

6

signed rejection form represents a prima facie showing that UM coverage does not apply. State Farm Mut. Auto. Ins. Co. v. Parrish, 873 So. 2d 547, 549 (Fla. Dist. Ct. App. 2004). The insured's signature on the form creates a "conclusive" presumption that the waiver was knowingly made, on which the insurer is entitled to rely. Id. at 551; Fla. Stat. § 627.727(1).

Despite the statutory creation of a "conclusive" presumption, the presumption can be overcome by evidence of exigent circumstances showing the rejection was not "knowing." See Parrish, 873 So. 2d at 550 (the insured is bound by his signature "[a]bsent exigent circumstances such as forgery, fraud, or trickery"). The burden of proving that the rejection was not knowingly made rests with the insured, who must present some evidence to that effect. See Jackson v. State Farm Fire and Cas. Co., 469 So. 2d 191, 193 (Fla. Dist. Ct. App. 1985). Merely contending that the rejection was not knowingly made is insufficient, as is testimony that the insured did not read the rejection forms. Id. ("In cases where a court has said that the insurance company presented insufficient evidence of a knowing rejection, there has been some evidence, beyond a mere allegation, from which it could be concluded that no knowing rejection was made."); Liberty Mut. Ins. Co., Inc. v. Ledford, 691 So. 2d 1164, 1166 (Fla. Dist. Ct. App. 1997) (conclusive presumption that applies where the insurer presents a signed rejection form cannot be rebutted with testimony that the insured who signed the form did not read it); Mitleider v. Brier Grieves Agency, Inc., 53 So. 3d 410, 412 (Fla. Dist. Ct. App. 2011) (conclusive presumption created by § 627.727 forestalled

---

requirements of Fla. Stat. § 627.727(1). (See notes 2 and 4, supra; Doc. 52.)

7

appellant's claim that he was not offered or informed of uninsured motorist coverage, as presumption cannot be rebutted by testimony that the person signing the rejection form did not read it). Whether an insured has knowingly rejected UM coverage is an issue to be decided by the trier of fact. Jackson, 469 So. 2d at 193 (quoting Kimbrell v. Great Am. Ins. Co., 420 So. 2d 1086 (Fla. 1982)); see also Petrou v. South Carolina Ins. Co., 435 So. 2d 316, 318 (Fla. Dist. Ct. App. 1983) ("The question of whether an insured has knowingly rejected uninsured motorist coverage . . . is an appropriate jury issue.").

At trial, State Farm offered as evidence written UM rejection forms signed by one of the Witherups for each of their three policies, which constitutes a prima facie showing that UM coverage does not apply. Parrish, 873 So. 2d at 549. Because State Farm presented signed UM selection/rejection forms, the burden of proof shifted to the Witherups to show that these rejections were not "knowing." Jackson, 469 So. 2d at 193. Ultimately, they failed to carry this burden and overcome the "conclusive" statutory presumption that each of their signed written rejections was knowing and voluntary. Parrish, 873 So. 2d at 550-51; Fla. Stat. § 627.727(1). The Witherups have not produced credible evidence [7] that their signed written rejections were not knowingly made, and their mere contentions to that effect are insufficient. Moreover, the Court has determined that there was no forgery, fraud, or trickery involved in obtaining the Witherups' written rejections of UM coverage. (Part I, supra.)

If that was the end of the story, judgment would be rendered in favor of State Farm without further inquiry. But the Witherups contend that because of mistakes

---

[7] See note 3, supra.

8

made by State Farm both at the time of purchase of the Mercedes and thereafter, there was a material change in the coverage which required them to sign a new UM rejection. Since they did not, they contend that State Farm must provide UM coverage.

Because the Witherups executed UM rejections at the time the policies were issued, State Farm was not required to provide UM coverage "in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits," unless the Witherups later requested such coverage in writing. Fla. Stat. § 627.727(1). State Farm was only required to have them execute new UM rejection forms if the original policies were changed in any "material respect." Sentry Ins. A Mut. Co. v. McGowan, 425 So. 2d 98 (Fla. Dist. Ct. App. 1982) (noting the test was first enunciated in Maxwell v. United States Fid. and Guar. Co., 399 So. 2d 1051 (Fla. Dist. Ct. App. 1981)). Not all changes are material. Indeed, "[t]he language used within the statute specifically provides for changes to be made to the policy without a required new offering of UM coverages. The statute uses broad terms, including 'replacement,' so that numerous changes to the policy may be effected without requiring a new election for UM coverage." State Farm Mut. Auto. Ins. Co. v. Shaw, 967 So. 2d 1011, 1016 (Fla. Dist. Ct. App. 2007). The substitution or addition of a vehicle to an existing policy does not create a "new policy" requiring a new UM selection form when liability limits remain the same. See, e.g., Gasch v. Harris, 808 So. 2d 1260 (Fla. Dist. Ct. App. 2002) (new rejection not required upon substitution of vehicle); Gov't Emps. Ins. Co. v. Stafstrom, 668 So. 2d 631 (Fla. Dist. Ct. App. 1996) (new UM rejection not required for third vehicle added to policy);

9

see also Nationwide Mut. Fire Ins. Co. v. Hild, 818 So. 2d 714, 716 (Fla. Dist. Ct. App. 2002) (addition of a vehicle to an existing policy "constituted nothing more than a change to or an extension of the existing policy," where the plaintiff added his new wife and her car to his existing auto insurance policy but did not request any change in coverage; new UM selection form was not required because the statutory language "clearly shows" that once an insured properly rejects UM coverage in writing, the "plain language" of the statute "makes the insured's original selection of nonstacked UM coverage applicable to all renewals, extensions, and changes to an existing policy unless the insured specifically requests a change . . . and pays the additional premium."); Sentry, 425 So. 2d at 99 (applying Maxwell test to "hold that the addition of new vehicles to an existing policy does not constitute a variation in the terms of the policy material enough to require a new rejection of [UM] coverage each time an additional vehicle is added."); State Farm Mut. Auto. Ins. Co. v. Bergman, 387 So. 2d 494, 495 (Fla. Dist. Ct. App. 1980) (same, as to replacement vehicles). It is undisputed that, at the time the Witherups purchased the Mercedes, State Farm mistakenly treated the Mercedes as a replacement vehicle for the Chrysler.

Relying on Creighton v. State Farm, 696 So. 2d 1305 (Fla. 2d DCA 1997), and Chase v. Horace Mann Insurance Company, 158 So. 3d 514 (Fla. 2015), the Witherups argue that the combination of State Farm mistakenly dropping coverage on the Chrysler at the time the Witherups purchased the Mercedes and the Witherups' request for insurance coverage (not UM coverage) on the Mercedes once the mistaken replacement came to light was a material change to the coverages and policies such

10

that State Farm was required to obtain new written rejections of UM coverage. Neither of those cases dictate the Witherups' entitlement to UM coverage under the distinguishable facts of this case.

In Creighton, despite changing the owner of the policy and billing address from the employer to the employee plaintiff and changing the vehicle covered by the policy, State Farm updated the existing policy rather than issuing a new policy. 696 So. 2d at 1306. The court explained that, regardless of the tactics State Farm employed, the policy was a new policy as to the plaintiff just as if the employer's policy had been canceled and a new one issued to the plaintiff. Id. Of import to the court's decision was that the plaintiff was merely a driver, not a named insured, on the original policy (unlike the Witherups); he therefore did not have the opportunity to select or reject UM benefits under the policy (unlike the Witherups); and he never signed a waiver form (unlike the Witherups).

Similarly, in Chase, the plaintiff never had an opportunity to make the statutorily-required waiver (unlike the Witherups) because he previously was only listed as a driver, not a named insured. 158 So. 3d at 522. The Florida Supreme Court concluded that "[t]he policy in question is a new policy for purposes of section 627.727(9), Florida Statutes (2008), because the only named insured on the policy has not previously been a named insured on the policy, and therefore had not had the opportunity to make any of the express waivers required by law." Id. at 518. The grounds upon which the Creighton and Chase courts concluded that the policies were new, and therefore new UM rejection forms were required, are inapplicable here; the

11

Witherups were, and have always been, named insureds with the authority and opportunity to waive or request UM coverage. And, they did execute written waivers on all their vehicles.

When the Witherups learned that the Mercedes was initially (albeit mistakenly) treated as a replacement vehicle, Felicia Witherup contacted State Farm and, as a result, the '7355 Policy was issued as a new policy on the Chrysler, with the Mercedes remaining covered under the '9075 Policy. At that time, State Farm sent, and the Witherups signed and returned, a written rejection of UM coverage under the '7355 Policy. The Mercedes remained as a replacement vehicle on the existing '9075 Policy, for which a written rejection had been executed and for which no new written rejection form was required. That the Witherups did not understand the new policy was issued on the Chrysler rather than the Mercedes, or did not read the policy paperwork or any of the subsequent renewal or premium notices for either the '7355 Policy or the '9075 Policy that state which policy covered which vehicle, does not rebut the statutory presumption to which State Farm is entitled. The mere addition of the Mercedes to the Witherups' <u>existing</u> '9075 Policy did not alter that policy in any material respect and therefore no new written rejection form was required. State Farm was entitled to rely on the Witherups' prior signed written rejection of UM coverage under both the '9075 and '7355 policies.

Finally, the Witherups argue that because neither the Chrysler nor Mercedes was covered for a brief period there was a lapse in coverage and the addition of those vehicles back on to the policies resulted in a change in bodily injury liability limits

which, in turn, required State Farm to obtain new signed written UM rejection forms. It is true that a lapse in coverage due to a lapse in an insured's policy may necessitate obtaining a new signed UM rejection form. See, e.g., Bell v. Progressive Specialty Ins. Co., 744 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 1999) (concluding that new insurer was entitled to rely on plaintiff's previous written rejection of UM coverage under policy issued by prior insurer, but noting that "[t]his conclusion depends in part on the fact that the transfer of the policy did not result in a lapse of coverage. A new rejection form would have been required if the original insurance policy had expired and if [the plaintiff] had then purchased identical coverage with another company. Under these circumstances, the new insurance policy could not be characterized as a replacement policy.") (emphasis added); Nat'l Am. Ins. Co. v. Baxley, 578 So. 2d 441, 443 (Fla. Dist. Ct. App. 1991) ("Assuming arguendo that this provision [627.727(1)] applies to a replacement policy issued by a different insurer, when NAIC assumed coverage of Baxley's business, no 'existing policy' was replaced. It was undisputed that, from 12:01 A.M., November 5, 1988, until 12:01 A.M., November 7, 1988, Baxley was entirely without insurance coverage."). Here, however, although the Mercedes and the Chrysler may have lacked coverage for a period and "temporary coverage" on the Mercedes under the '9075 Policy may have expired, coverage under the same policy issued by the same insurer, State Farm, was quickly restored, the '9075 Policy itself did not lapse or expire, and the bodily injury limits previously selected under that policy were not changed. It was therefore at all times an "existing policy" for which no new signed written UM rejection forms were required. The same holds true for the

13

'7355 Policy.

### III. CONCLUSION

Every time the Witherups were asked by State Farm whether they wanted UM coverage, they said no. They executed three separate written waivers of UM coverage, including one for the policy which covered the Mercedes involved in the accident. While State Farm made some mistakes in the way it handled adding the Mercedes to coverage, those errors did not materially change the policies or coverages such that it was required to obtain a new UM waiver form from the Witherups. The Witherups have not overcome State Farm's prima facie showing that UM coverage does not apply. Nor have they defeated the statutory presumption that their written rejection of UM coverage was knowing and voluntary.

The Witherups have no uninsured motorist coverage under State Farm policies numbered 776 9075, 776 9076, and 926 7355 applicable to the motor vehicle accident occurring on January 30, 2014 in Jacksonville, Florida. A declaratory judgment to that effect will be entered.

**DONE AND ORDERED** in Jacksonville, Florida the 5th day of October, 2016.

TIMOTHY J. CORRIGAN
United States District Judge

ab
Copies:

Counsel of record